UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL J. BRADLEY & YVADNE
BRADLEY,

                              Plaintiffs,

          v.

MARKEL SERVICE, INC., *et al.*,

                              Defendants.

No. 22-CV-8928 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Edmond C. Chakmakian, Esq.
Law Offices of Edmond C. Chakmakian, P.C.
Hauppauge, NY
*Counsel for Plaintiffs*

April T. Villaverde, Esq.
Matthew C. Ferlazzo, Esq.
Hinshaw & Culbertson LLP
Edison, NJ
*Counsel for Defendants Markel Service, Inc., Evanston Insurance Co., and Essex Insurance Co.*

KENNETH M. KARAS, United States District Judge:

          Michael and Yvadne Bradley ("Michael" and "Yvadne," respectively; collectively,

"Plaintiffs") bring this Action alleging breach of contract against Markel Service, Inc.

("Markel"), Evanston Insurance Co. ("Evanston"), and Essex Insurance Co. ("Essex," and

collectively, "Defendants").  (Compl. (Dkt. No. 1-1).)[1]  Before the Court is Defendants' Motion

---

          [1] Plaintiffs also initially brought suit against RT Specialty, LLC and LoVullo Associates,
Inc.  (*See* Compl.)  However, Plaintiffs submitted a letter requesting that these Parties be
dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41 on November 15, 2022,
and the Court granted this request the same day.  (*See* Order (Dkt. No. 12).)

To Dismiss.  (Not. of Mot. (Dkt. No. 26).)  For the reasons stated herein, Defendants' Motion is granted.

## I.  Background

### A.  Materials Considered

As a threshold matter, the Court must decide what documents it may consider in deciding the instant Motion.  Defendants argue that the Court may take into consideration several documents that Plaintiffs relied upon in filing their Complaint in this Action.  (Defs' Mem. of Law in Supp. of Mot. To Dismiss ("Defs' Mem.") 11–12 (Dkt. No. 28); *see also* Decl. of April T. Villaverde, Esq. ("Villaverde Decl.") (Dkt. No. 27).)  Plaintiffs have also attached several documents to their opposition papers to which they refer.  (Pls' Mem. of Law in Opp'n to Mot. To Dismiss ("Pl's Opp'n") (Dkt. No. 29); *see also* Decl. of Edmond Chakmakian ("Chakmakian Decl.") (Dkt. No. 30).)

Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56."  *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (quotation marks omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or

2

incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'"

(alteration omitted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

Defendants have submitted the following documents in support of their Motion:

1. The Complaint filed by Plaintiffs in *Michael and Yvadne Bradley v. Vapor Lounge LLC and "XYZ Corp."*, Index No. EF011800-2018 (Sup. Ct., Orange Cnty. Dec. 3, 2018) (the "State Complaint" from the "underlying action"), (Villaverde Decl. Ex. 2 ("State Compl.") (Dkt. No. 27-2));

2. An insurance policy, policy number 2CT1387, issued to Vapor Lounge, LLC ("Vapor Lounge") and in effect from May 7, 2015 to May 7, 2016 (the "Policy"), (*id.* Ex. 1 ("Policy") (Dkt. No. 27-1));

3. A letter, dated March 7, 2016 from Essex to Vapor Lounge, (*id.* Ex. 3 (Dkt. No. 27-3));

4. A letter, dated December 26, 2018, from Evanston to Vapor Lounge, (*id.* Ex. 4 (Dkt. No. 27-4));

5. A letter, dated November 25, 2019, from Evanston to Vapor Lounge, (*id.* Ex. 5 (Dkt. No. 27-5));

6. A letter, dated May 20, 2022, from Evanston to Plaintiffs, (*id.* Ex. 6 (Dkt. No. 27-6).)

The Court may take judicial notice of the State Complaint, albeit it for a limited purpose, because it is a document filed before another court. *See, e.g.*, *Kalra v. Adler Pollock & Sheehan, P.C.*, No. 20-CV-1393, 2022 WL 788507, at *2 (D. Conn. Mar. 15, 2022) (noting that "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings" (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008))). Additionally, the Court may consider the Policy and the four letters because courts in the Second Circuit routinely consider the underlying insurance policy and any denial letters when adjudicating an alleged insurance contract breach, as the cause of action necessarily relies heavily on the policy's terms and effect. *See, e.g.*, *LM Ins. Corp. v. James River Ins. Co.*, No.

22-CV-7472, 2023 WL 5509264, at *4 (S.D.N.Y. Aug. 25, 2023) (holding that insurance policy

and denial letter were integral to complaint alleging breach of the policy); *J.A.V. Petroleum Inc.*

*v. Norguard Ins. Co.*, No. 17-CV-5107, 2018 WL 10676901, at *4 (E.D.N.Y. June 19, 2018)

(finding policy and denial letters were integral to complaint alleging breach of the policy); *Mears*

*v. Allstate Indem. Co.*, 336 F. Supp. 3d 141, 147 (E.D.N.Y. 2018) (same).

Plaintiffs have attached the following documents in opposition to Defendants' Motion:

(1) a copy of a so-ordered stipulation entered in the underlying action (the "Stipulation"),

(Chakmakian Decl. Ex. A ("Stip.") (Dkt. No. 30-1)), and (2) a copy of an exemplar warning,

(Chakmakian Decl. Ex. C (Dkt. No. 30-3)).  The Court will take judicial notice of the Stipulation

because it is a record of a filing in another court.  *See Kalra*, 2022 WL 788507, at *2.  Plaintiff

has not provided any basis for the Court to consider the exemplar warning, and the Court thus

declines to consider it.

### B.  Factual Background

The following facts are taken from Plaintiffs' Complaint and are assumed to be true for

the purposes of ruling on the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y.*

*Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Michael and Yvadne live in Warwick, New York.  (Compl. ¶¶ 1–2.)  At some point,

Michael purchased an electronic cigarette from Vapor Lounge.  (*Id.* ¶¶ 35–36.)  Plaintiffs allege

that, prior to Michael's purchase, a Vapor Lounge employee removed a written warning

concerning the "dangers of electronic cigarette . . . batteries arcing when coming into contact

with certain metals" from the electronic cigarette without Michael's knowledge.  (*Id.* ¶¶ 36–37.)

On December 3, 2015, Michael was at work and sustained serious burns to his left lower

extremities and hands after the battery in the electronic cigarette caught fire when its batteries

arced with coins in his pocket.  (*Id.* ¶ 39.)

4

On December 3, 2018, Plaintiffs brought suit against Vapor Lounge, alleging ordinary negligence, strict products liability, and breach of implied and express warranties on behalf of Michael and loss of consortium on behalf of Yvadne.  (*Id.* ¶¶ 40–41; *see generally* State Compl.)  On May 12, 2022, the parties in the underlying action stipulated that the strict products liability cause of action would not be presented to the jury.  (Compl. ¶ 54; *see also* Stip.)  On July 11, 2022, Vapor Lounge notified the court that it would be defaulting in the underlying action.  (Compl. ¶ 56.)  On August 23, 2022, the court awarded a damages judgment of $2.59 million in favor of Michael and $575,000 in favor of Yvadne.  (*Id.* ¶ 58.)

As relevant here, during the period from May 7, 2015 to May 7, 2016, Essex provided insurance to Vapor Lounge under the Policy.  (Policy 2, 5.)[2]  The Policy provides that Evanston will:

> Pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury. . . to which this insurance applies . . . [and] have the right and duty to defend the insured against any suit seeking those damages . . . [but] no duty to defend the insured against any suit seeking damages for bodily injury to which this insurance does not apply.

(*Id.* 12.)[3]  The Policy further provides that the "[c]overage territory" is the United States and "[a]ll other parts of the world if the injury . . . arises out of . . . [g]oods or products made or sold by you in [the United States][.]"  (*Id.* 24.)

---

[2] Essex has since merged with Evanston, which is its successor in interest.  (Policy 2; Villaverde Decl. Ex. 6.)

[3] The Policy identifies defined terms by the use of double quotation marks (e.g., "bodily injury") whenever such a term is used.  For ease of reading, the Court has silently deleted all such double quotation marks when quoting from the Policy.
The Policy also defines the word "you" and "your" to "refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under" the Policy.  (Policy at 12.)
The Policy defines bodily injury as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  (*Id.* 24.)

The Policy includes an endorsement titled "Exclusion – Products-Completed Operations Hazard [the "Products Exclusion"]," which provides that the Policy does not "apply to bodily injury . . . included within the [Products Exclusion]," which is defined as "all bodily injury . . . occurring away from premises [the insured] own[s] or rent[s] and arising out of [the insured's] product[.]"  (*Id.* 32, 26.)[4]  An insured's product encompasses "[a]ny goods or products . . . manufactured, sold, handled, distributed or disposed of by[] [the insured] . . . [or] [o]thers trading under [the insured's] name," along with "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of [the insured's] product" and "[t]he providing of or failure to provide warnings or instructions."  (*Id.* 26–27.)

Evanston through its claims manager Markel, sent letters to Vapor Lounge disclaiming coverage pursuant to the Products Exclusion on March 7, 2016; December 26, 2018; and November 26, 2019.  (Villaverde Decl. Exs. 3–5.)  On May 20, 2022, Evanston also sent a letter to Plaintiffs disclaiming coverage.  (*Id.* Ex. 6.)

C.  Procedural History

On September 13, 2022, Plaintiffs filed the instant Action in New York Supreme Court, Orange County, seeking a declaration that Evanston, Essex, and Markel owe a duty to defend and indemnify Vapor Lounge.  (*See generally* Compl.)

Defendants removed this case from New York Supreme Court, Orange County on October 19, 2022.  (Not. of Removal (Dkt. No. 1).)  On October 25, 2022, Defendants submitted a letter to the Court requesting a pre-motion conference and seeking leave to file a Motion To Dismiss.  (Letter from Matthew C. Ferlazzo, Esq. to Court (October 25, 2022) (Dkt. No. 5).)  On November 23, 2022, Plaintiffs filed a letter in response.  (Letter from Edmond C. Chakmakian,

---

[4] The Products Exclusion includes a statement that "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  (*Id.* at 32.)

Esq. to Court (November 23, 2022) (Dkt. No. 20).)  At a conference on December 16, 2022, the

Court set a briefing schedule for Defendants' Motion To Dismiss.  (Dkt. (minute entry for

December 16, 2022); *see also* Order (Dkt. No. 23).)

On February 28, 2023, Defendants filed their Motion To Dismiss and accompanying

papers.  (Not. of Mot.; Defs' Mem.; Villaverde Decl.).)  Plaintiffs filed their opposition papers

the same day.  (Pl's Opp'n; Chakmakian Decl.)  Defendants filed their Reply on March 14, 2023.

(Defs' Reply (Dkt. No. 31).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of

[its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does

a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.*

(alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be

enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at

555.  Although "once a claim has been stated adequately, it may be supported by showing any

set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must

allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a

plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[]

complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, and as noted above, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

1.  Policy Interpretation

Defendants argue that Plaintiffs' request for declaratory judgment must be denied because the Products Exclusion unambiguously precludes coverage of Michael's injuries.  (Defs' Mem. 12–15.)  Plaintiffs counter that the Policy is ambiguous and must be construed in Plaintiff's favor.  (Pl's Opp'n 8–12.)

Under New York law, an insurer has a duty to defend a claim against its policyholder unless it can "establish, as a matter of law, that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify [the insured] under any provision contained in the policy." *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 476 N.E.2d 640, 641 (N.Y. 1985).  An insurer who seeks to be relieved of the duty to defend based on a policy exclusion "bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Frontier Insulation Contractors v. Merchs. Mut. Ins. Co.*, 690 N.E.2d 866, 868–69 (N.Y. 1997); *see also Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012) (similar).  Further, "[i]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Frontier Insulation Contractors,* 690 N.E.2d at 869.

"[C]ourts bear the responsibility of determining the rights and obligations of parties under insurance contracts based on the specific language of the policies . . . ." *Sanabria v. American Home Assur. Co.,* 501 N.E.2d 24, 24 (N.Y. 1986) (quotation marks and citation omitted); *see also Georgitsi Realty, LLC v. Penn-Star Ins. Co.*, 702 F.3d 152, 155 (2d Cir. 2012) (same).  "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 884 N.E.2d 1044, 1047 (N.Y. 2008) (quotation marks omitted); *Michael Cetta, Inc. v. Admiral Indem. Co.* 506 F. Supp. 3d 168, 175–76 (S.D.N.Y. 2020) ("The initial interpretation of a contract is a matter of law

for the court to decide[,] [and] [i]nsurance contracts must be interpreted according to common speech and consistent with the reasonable expectation of the average insured." (quotation marks and citation omitted)).  The Court's interpretation of the language of an insurance contract must "afford[] a fair meaning to all of the language employed by the parties in the contract and leave[] no provision without force and effect."  *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687, 693 (N.Y. 2002) (quotation marks and citation omitted); *Jovani Fashion Ltd. v. Fed. Ins. Co.*, 416 F. Supp. 3d 334, 341 (S.D.N.Y. 2019) (same).

A provision of an insurance contract is ambiguous when it is susceptible to "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 906 (2d Cir. 1997) (quotation marks and citation omitted).  If a provision is found to be ambiguous, "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract."  *Alexander & Alexander Servs. Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998).  "If the extrinsic evidence does not yield a conclusive answer as to the parties' intent," rules of contract construction may be applied.  *McCostis v. Home Ins. Co. of Ind.*, 31 F.3d 110, 113 (2d Cir. 1994) (citing *Matthews v. Am. Cent. Ins. Co.*, 48 N.E. 751, 752 (N.Y. 1897)).

New York courts read endorsements to insurance policies to supersede general provisions where the two could be read to conflict.  *See DRK, LLC v. Burlington Ins. Co.*, 905 N.Y.S.2d 58, 60 (App. Div. 2010) (citing *Muzak Corp. v Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956) (finding cross liability endorsement controlled over separation of insureds provision in policy); *Greenwich Ins. Co. v. Volunteers of Am.-Greater N.Y., Inc.*, 880 N.Y.S.2d 33, 33–34 (App. Div.

2009) (giving effect to specific provision concerning fire damage liability over potentially

conflicting provision concerning liability for damages generally); *cf. CGS Indus., Inc. v. Charter

Oak Fire Ins. Co.*, 720 F.3d 71, 84 (2d Cir. 2013) ("[I]t is settled that in construing an

endorsement to an insurance policy, the endorsement and the policy must be read together, and

the words of the policy remain in full force and effect except as altered by the words of the

endorsement." (quoting *County of Columbia v. Cont'l Ins. Co.*, 634 N.E.2d 946, 950 (N.Y. 1994)

(quotation marks omitted)).

Defendants assert that there is no coverage under the Policy because the Products

Exclusion unambiguously precludes coverage as it is undisputed that Michael's injuries occurred

at his work location at some point after he purchased the electronic cigarette from Vapor Lounge.

(Defs' Mem. 12–15.)  The Court agrees and finds that Plaintiffs' arguments to the contrary are

without merit.

Plaintiff first argues that the Policy is ambiguous because the "coverage territory" is

defined in the Policy as including "[a]ll other parts of the world if the injury . . . arises out of . . .

[g]oods or products made or sold by you in [the United States]," (Policy 24), but the Products

Exclusion provides that there will be no coverage for "bodily injury . . . occurring *away* from

premises you own or rent and arising out of [the insured's] product[,]" (*id.* 26) (emphasis added).

The Court finds that there is no ambiguity here, as the Products Exclusion clearly states that

"THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  (*Id.*

at 32.)  Given this unambiguous language, the only logical reading of the Products Exclusion is

that it amends the definition of "coverage territory" in the policy and thus that the Products

Exclusion applies to Plaintiff's claim.  *See, e.g.*, *CGS Indus.*, 720 F.3d at 84 (explaining that "the

endorsement and the policy must be read together, and the words of the policy remain in full

force and effect except as altered by the words of the endorsement." (quotation marks omitted)); *see also Logan's Silo Sales & Serv., Inc. v. Nationwide Mut. Fire Ins. Co.*, 585 N.Y.S.2d 646, 647 (App. Div. 1992) (finding products exclusion unambiguously modified policy and barred insured's request for defense and indemnification for accident involving insured's product that occurred after purchase and at another location); *Pa. Gen. Ins. Co. v. Kielon*, 492 N.Y.S.2d 502, 503 (App. Div. 1985) (holding that products exclusion barred coverage where accident involving product sold by insured occurred away from insured's premises after sale had been completed).

Plaintiffs next argue that the Products Exclusion does not bar their claim because they are asserting a claim sounding in negligence rather than strict product liability.  (Pl's Opp'n 8.) However, the Products Exclusion bars coverage for "*all* bodily injury . . . occurring away from premises [the insured] own[s] or rent[s] and *arising out of* [the insured's] product[,]" including from "[a]ny goods or products . . . sold . . . or disposed of by[] [the insured]" and "[t]he providing of or failure to provide warnings or instructions [for the products]."  (Policy 26–27) (emphasis added).  Thus, the negligence Plaintiffs have identified in their Complaint—personnel at Vapor Lounge removing a warning on the electronic cigarette concerning arcing prior to Michael purchasing it, (Compl. ¶¶ 35–39)—is covered by the unambiguous language of the Products Exclusion, which excludes claims for "all" bodily injury, regardless of cause, that occurs away from the insured's premises and resulted from a failure to provide warnings or instructions for the product.  New York courts and courts in other districts interpreting similar language in similar policies have reached the same conclusion.  *See, e.g.*, *Logan's Silo Sales*, 585 N.Y.S.2d at 647 (holding products exclusion barred coverage for purchaser's negligence claim against insured); *Rhinebeck Bicycle Shop, Inc. v. Sterling Ins. Co.*, 546 N.Y.S.2d 499, 501 (App. Div. 1989) (holding products exclusion barred coverage of accident victim's negligence claim

against insured); *United Specialty Ins. Co. v. E-Cig Vapor Emporium, LLC*, No. 18-CV-2, 2018 WL 5098859, at *6 (C.D. Cal. Oct. 15, 2018) (finding that products exclusion precluded coverage for electronic cigarette purchaser's negligence claim against insured).

Thus, Plaintiff's request for declaratory judgment is denied.

### 2. Abandonment

Defendants argues that Plaintiffs have abandoned their breach of contract claim by failing to address Defendants' arguments in their opposition.  (Defs' Reply 9.)[5]  The Court agrees, as "[a] plaintiff effectively concedes a defendant's arguments by [her] failure to respond to them." *Felske v. Hirschmann*, No. 10-CV-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) (collecting cases); *see also Lopez Canas v. Whitaker*, No. 19-CV-6031, 2019 WL 2287789, at *5 (W.D.N.Y. May 29, 2019) ("It is well settled in this Circuit that a plaintiff effectively concedes a defendant's arguments by his failure to respond to them" (alteration and quotation marks omitted)); *Miles v. Walawender*, No. 10-CV-973, 2013 WL 1908304, at *1 (W.D.N.Y. May 7, 2013) ("[The] [p]laintiff's opposing [m]emorandum of [l]aw does not respond to this argument, and effectively concedes these arguments by his failure to respond to them." (alteration, citation, and quotation marks omitted)).  Thus, Plaintiff's breach of contract and bad faith claims are dismissed.

---

[5] Defendants also argue that Plaintiffs have conceded Defendants' arguments that Plaintiffs have no claim against Essex because it has merged into Evanston and that Markel cannot be liable under the Policy because it is not an insurer.  (Defs' Mem. 16–17; Defs' Reply 9–10.)  However, the Court declines to consider these arguments as they require findings of fact that would be inappropriate in deciding a Motion To Dismiss.  *See, e.g., Erickson*, 551 U.S. at 94 (explaining that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").  Moreover, these arguments are moot as the Court is dismissing the Action.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted.  However, because this is the first adjudication of their claims on the merits, Plaintiffs' claims are dismissed without prejudice.  If Plaintiffs wish to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiffs must do so within 30 days of the date of this Order.  The amended complaint will replace, not supplement, the original complaint.  The failure to timely file an amended complaint may result in the dismissal of this Action with prejudice.  The Clerk of Court is respectfully directed to terminate the pending motion.  (*See* Dkt. No. 26.)

SO ORDERED.

Dated:   September 22, 2023
         White Plains, New York

KENNETH M. KARAS
United States District Judge